IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JOHN ANDERSON,

                Plaintiff,

     v.

THE CHICAGO LAND TRUST COMPANY,
as Successor Trustee to LaSALLE
NATIONAL BANK, as Original
Trustee under Trust Agreement
dated March 28, 1900, and Known
as Trust No. 115406, *et al.*,

                Defendants.

Case No. 10 C 5415

Hon. Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Before the Court are several Motions for Summary Judgment, a Motion to Strike and a Motion for Sanctions. For the reasons stated herein (1) Defendants Midwestern Regional Medical Center and Northeast Illinois Medical Properties, LP's Motion for Summary Judgment is granted in part and denied in part; (2) Defendant Safway Services, LLC's Motion for Summary Judgment is granted; (3) the remaining Motions for Summary Judgment are struck; (4) Plaintiff John Anderson's Motion to Strike is denied as moot; and (5) Defendant Safway Services, LLC's Motion for Sanctions is denied.

## I.  BACKGROUND

Plaintiff John Anderson (hereinafter, "Plaintiff" or "Anderson") is a carpenter. In mid-2008, he was employed by Riley

Construction Company ("Riley") to work at a construction site near 2520 Elisha Avenue in Zion, Illinois. Title to the premises where the construction took place (the "Premises") was held by Defendant Chicago Land Trust, as a Successor Trustee to LaSalle National Bank as Original Trustee under a Trust Agreement dated March 28, 1990 and known as Trust No. 115406. The beneficiary of the land trust was Defendant Northeast Illinois Medical Properties, LP ("NIMP"). NIMP leased the Premises to Defendant Midwestern Regional Medical Center ("MRMC").

MRMC contracted with Riley to serve as a construction manager tasked with constructing a specialized building designed to contain a "linear accelerator" for a medical facility on the Premises. A linear accelerator is a particle accelerator used for radiation treatment of cancer patients by delivering high-energy x-rays to a patient's tumor. The contract laid out various rights and responsibilities of the parties. For example, Riley was to be responsible for safety measures under the contract, while MRMC had the right to stop or change the work. As part of the project, a construction fence was built around the construction area. The parties dispute whether and to what extent MRMC employees could enter the construction site.

On the morning of August 26, 2008, Plaintiff was working below grade in a hole excavated for the foundation of the linear accelerator, also known as the vault. Heavy duty scaffolding was

going to be used within the vault in connection with the pouring of a concrete deck. Plaintiff alleges that this scaffolding was provided by Defendant Safway Services, LLC ("Safway"). Bundles of the scaffolding were lowered down into the vault by crane. However, at some point that morning it was determined that the scaffolding was the wrong size for the job and needed to be removed from the vault.

Plaintiff was assisting in the removal of the scaffolding from the vault when he was injured. His role in the scaffolding removal was to rig and secure the banded set of scaffolding with a strap to the crane cable hook. This required Plaintiff to climb on the scaffolding and set the strap to the crane cable hook with his left hand while maintaining balance by placing his right hand on the banded scaffolding. Plaintiff states that this is a task he has done throughout his years as a carpenter. However, while performing this task, components of the banded scaffolding slipped and moved, and Plaintiff's right hand was caught between shifting components of the scaffolding. This resulted in Plaintiff sustaining injuries to his right hand.

Riley's superintendent, Roy Micke, did not see Plaintiff get injured. However, he testified that he viewed the scaffolding after the incident, and that it was leaning against one of the walls in the vault in a bowed state. He also testified that he

would not have stepped on the bowed scaffolding because the weight of stepping on it would bring it down in the manner it had.

Plaintiff filed this action on August 26, 2010 asserting various negligence claims against MRMC, NIMP, Safway, the Land Trust, and various cancer treatment centers (the "Cancer Treatment Centers"). Defendants filed several separate Motions for Summary Judgment, which are now before the Court. Plaintiff indicated in his Opposition to MRMC/NIMP's Motion for Summary Judgment that he was stipulating to the dismissal of the Land Trust and the Cancer Treatment Center Defendants. As such, the Court will discuss only on the remaining Motions for Summary Judgment, which are those filed by MRMC/NIMP and Safway.

## II.  **LEGAL STANDARD**

Federal Rule of Civil Procedure 56 requires this Court to enter summary judgment on the Defendants' motions "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986). The court must review the record and draw all

inferences from it in the light most favorable to the non-moving party. *Sharer v. Atchison, T.& S.F.R. Co.*, No. 91 C 3585, 1992 U.S. Dist. LEXIS 7224 at *14 (N.D. Ill. May 14, 1992).

### III  ANALYSIS

### A.  Rule 56.1

The Court is compelled to note at the outset a general frustration with deficiencies in the Local Rule 56.1 Statements of Fact and responses submitted by Plaintiff, MRMC/NIMP and Safway. These parties all displayed some level of misapprehension of or disregard for the purpose and requirements of Local Rule 56.1.

A Local Rule 56.1 statement should consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in the paragraph. L.R. 56.1(a). The response to the movant's statement should contain concise responses and, in the case of disagreement, specific references to supporting materials.

As the Seventh Circuit has explained:

> For litigants appearing in the Northern District of Illinois, the Rule 56.1 statement is a critical, and required, component of a litigant's response to a motion for summary judgment. The purpose of the local rule is to make the summary judgment process less burdensome on district courts, by requiring parties to nail down the relevant facts and the way they propose to support them.

*Sojka v. Bovis Lend Lease, Inc.,* 686 F.3d 394, 398 (7th Cir. 2012). It is not the purpose of a Rule 56.1 Statement to make legal arguments. *See, e.g., Freight Train Adver., LLC v. Chi. Rail Link, LLC,* No. 11 C 2803, 2012 U.S. Dist. LEXIS 162330 at *28 (N.D. Ill. Nov. 14, 2012) (citing *Cady v. Sheahan,* 467 F.3d 1057, 1060 (7th Cir. 2006)). As such, a district court should not address such arguments made in a Rule 56.1 Statement or response. *Id.*

The Court will not march through all of the deficiencies with the Rule 56.1 submissions. It will, however, note a few problems in the hope of avoiding similar issues in the future. In responding to Plaintiff's Statement of Additional Facts, MRMC and NIMP failed to cite any specific references to materials supporting their responses. Instead, they chose to provide unhelpful and somewhat flippant answers such as: "Admit that the statement reflects some of the answers to the questions of the witnesses"; or "Admit that the witness may have had a different understanding of the words and phrases used by plaintiff's counsel at the depositions." MRMC/NIMP Reply to Pl.'s Rule 56.1 Statement ¶¶ 30, 31, ECF No. 124. The Court can think of no circumstances where such responses are in any way helpful to the Court in ruling on summary judgment submissions.

The Rule 56.1 Statement of Additional Facts issued by Plaintiff with respect to Safway's Motion for Summary Judgment was riddled with improper legal assertions and arguments posed as

facts. For example, Plaintiff asserted as an additional fact: "The documents relied upon by Safway for the assertion that the scaffolding was supplied by a different company . . . are inadmissible, because they are unauthenticated hearsay records, which do not qualify for admission under the business records exception." Pl.'s Statement of Add'l Facts ¶ 13, ECF No. 105. Considering that statement summarizes the entire legal argument upon which Plaintiff based a Motion to Strike, the Court fails to see how this statement could be seen as a fact.

Safway, for its part, chose to ignore Rule 56.1's focus on brevity, by submitting some statements of fact that were compound, and responding to other statements of fact with lengthy responses.

The Court is entitled to insist on strict compliance with Local Rule 56.1. *Siudut v. Banner Life Ins. Co.,* No. 12 C 1726, 2013 U.S. Dist. LEXIS 124383 at *3 (N.D. Ill. Aug. 30, 2013). But it is also within the Court's discretion to overlook transgressions with respect to the rule, as well. *Id.* In this case, requiring the parties to cure the faulty submissions would have only delayed the case, and the Court was able to wade through the parties' briefs to reach a decision. The Court reminds the parties, however, that they do themselves no favors by ignoring the Court's rules of procedure, and that strict compliance with those rules is expected in the future.

- 7 -

## B. Midwest Regional Medical Center (Count IV)

Count IV of the Complaint asserts two negligence theories against MRMC – one based on retained control and another on premises liability. Both of these theories are rooted in the Restatement (Second) of Torts. MRMC disputes that it can be found liable under either theory, whereas Plaintiff argues that there is a genuine issue of material fact as to those claims.

### 1. Restatement § 414 – Retained Control

In Illinois, a party alleging negligence must show that the defendant owed the plaintiff a duty of care, that the defendant breached this duty, and that the breach was the proximate cause of the plaintiff's injury. *Avalos v. Pulte Home Corp.,* 474 F.Supp.2d 961, 965 (N.D. Ill. 2007). Generally, such a duty arises when the parties stand in a special relationship to one another. *Id.* However, such a relationship is often lacking when a party hires an independent contractor. *Id.* Put another way, generally a party that entrusts work to an independent contractor is not liable for the contractor's acts or omissions. *Wilfong v. L.J. Dodd Constr.,* 930 N.E.2d 511, 526 (Ill. App. Ct. 2010). An exception to this general rule exists, though, and is provided in the Restatement (Second) of Torts § 414, which states:

> One who entrusts work to an independent contractor, but who retains control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable

- 8 -

> care, which is caused by his failure to
> exercise his control with reasonable care.

Restatement (Second) Torts § 414 (1965). This exception is known as the "retained control exception." *Wilfong,* 930 N.E.2d at 526.

Illinois has adopted the Restatement (2d) of Torts § 414. *Larson v. Commonwealth Edison Co.,* 211 N.E.2d 247 (Ill. 1965). Both parties acknowledge that § 414, and Illinois case law interpreting and applying that section, govern Plaintiff's negligence claim. In applying § 414, Illinois courts recognize that an employee hired by an independent contractor for construction work may recover from the owner for injuries sustained doing that work when the owner "has retained the requisite control over the work and has failed to exercise that control properly." *See McConnell v. Freeman United Coal Co.,* 555 N.E.2d 993, 995-96 (Ill. App. Ct. 1990).

On its plain terms, liability under § 414 arises only if two conditions are satisfied: (1) the defendant "entrusts work to an independent contractor"; and (2) the defendant "retains the control of any part of the work." *Henderson v. Bovis Lend Lease, Inc.,* 848 F.Supp.2d 847, 850 (N.D. Ill. 2012). Most Illinois decisions concerning § 414 turn exclusively on the control requirement. *Id.* This case is no different, as it is undisputed that MRMC hired Riley as the contractor for the construction at the site. MRMC thus entrusted the work to an independent contractor. The question

- 9 -

here then is whether MRMC retained sufficient control of any part of the work.

"In determining whether sufficient control has been retained, Illinois courts ask whether the principal merely retained general oversight of work progress and safety or actually engaged in detailed supervision and/or control of subcontractors' methods and means of performing work." *Aguirre v. Turner Constr. Co.,* 501 F.3d 825, 830 (7th Cir. 2007). To determine whether MRMC retained sufficient control, it is necessary to examine: (1) the construction contract between MRMC and Riley; and (2) the parties' actual practice and interaction with respect to control of the worksite. *Avalos,* 474 F.Supp.2d at 965-66. Following this framework, it appears there is an issue of material fact as to whether MRMC retained sufficient control such that it owed a duty to Plaintiff.

### a. The Construction Contract

As the parties point out, under Illinois law, "the best indicator" of whether a party has retained control over a subcontractor's work is the parties' contract, if one exists. *See, Joyce v. Mastri,* 861 N.E.2d 1102, 1110 (Ill. App. Ct. 2007). MRMC claims that the agreement between the parties makes it clear that it did not retain the requisite control. Plaintiff responds by pointing to various sections of the agreement that he believes demonstrate that MRMC retained sufficient control. A review of

those provisions, however, indicates the contract did not afford MRMC the level of control necessary under § 414 to impose liability.

Plaintiff states that the contract allows MRMC to:

1. reject any proposed subcontractor or supplier (§ 2.1.6);
2. designate specific persons to perform work (§ 2.3.2.1);
3. stop the work (§ 2.3.1);
4. carry out the work (§ 2.4.1 and § 6.1.1);
5. change the work (§ 7.1 and § 7.3);
6. have access to the construction site (§ 3.15.1); and
7. prescribe the means, methods, techniques, sequences and procedures of construction (§ 3.3.1)

See, Pl.'s Opp. to MRMC/NIMP Mot. for Summ. J. at 10, ECF No. 113 (citing Pl.'s Ex. B). A review of the provisions cited, and the rights they give to MRMC, clearly show that they do not dictate the methods of work or operative detail as contemplated under § 414. Indeed, the comments to § 414 provide guidance as to what level of control an employer needs to retain to subject himself to liability under this section:

> In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to

> operative detail. There must be such a
> retention of a right of supervision that the
> contractor is not entirely free to do the work
> in his own way.

*Id.* cmt. c. Thus, nearly all of the contractual sections upon which Plaintiff relies are ruled out expressly as being ones that might show control. For example, MRMC's ability under the contract to start and stop work, to go to the construction site and inspect its progress, to prescribe alterations and deviations are all considered rights preserved for employers, as they do not affect the manner in which the work is done. The Court finds that MRMC's ability to reject a proposed subcontractor, or to designate a particular person to do work, is in a similar vein – that determination does not affect how the work is done, but who is doing the work.

In light of the clear guidance given in § 414 comment c., the only contractual provision requiring serious examination is § 3.3.1, which Plaintiff claims reserves to MRMC "the right to prescribe the means, methods, techniques, sequences and procedures of construction." Pl.'s Resp. to MRMC/NIMP Mot. for Summ. J. at 10. Plaintiff's description of that provision is incomplete. That section states:

> § 3.3.1. The Contractor shall supervise and
> direct the Work, using the Contractor's best
> skill and attention. The Contractor shall be
> solely responsible for and have control over
> construction means, methods, techniques,
> sequences and procedures and for coordinating
> all portions of the Work under the Contract,

- 12 -

> unless the Contract Documents give other
> specific instructions concerning these
> matters. If the Contract Documents give
> specific instructions concerning construction
> means, methods, techniques, sequences or
> procedures, the Contractor shall evaluate the
> jobsite safety thereof and, except as stated
> below, shall be fully and solely responsible
> for the jobsite safety of such means, methods,
> techniques, sequences or procedures. . . .

*See,* Pl.'s Opp. to MRMC/NIMP Mot. for Summ. J. Ex. B § 3.3.1.
Contrary to Plaintiff's assertion, this provision makes it clear
that the Contractor "shall be solely responsible for and have
control over" the means, methods and procedures of work. *Id.* The
only circumstance in which that is not the case is if the contract
gives "other specific instructions concerning these matters." *Id.*
Plaintiff points the Court to no such other specific instructions
in the contract.

The Court also notes that various provisions of the contract
assigned responsibility for safety at the construction site to
Riley. *See, e.g.,* Pl.'s Opp. to MRMC/NIMP Mot. for Summ. J. Ex. B
§ 10.1.1 ("The Contractor shall be responsible for initiating,
maintaining and supervising all safety precautions and programs in
connection with the performance of the contract."). The contract
terms relied upon by Plaintiff thus fail to indicate that MRMC
retained control over the construction project.

### b. Other Indicators of Control

An examination of the construction contract does not end the
analysis, however. It is possible that while a company may enter

into a contract that does not indicate retention of control over the means and methods of work, in practice it may exercise such control. Plaintiff argues that there are several facts that indicate that MRMC retained such a level of control as to affect the means of the construction work: (1) the specialized nature of the linear accelerator construction required MRMC to retain control; (2) MRMC performed walkthroughs of the construction site, had input into the construction schedule, and had the authority to stop work; (3) MRMC personnel gave directions to Plaintiff that he followed; and (4) MRMC issued various manuals and documents that indicate it retained control. MRMC responds that none of these demonstrate that MRMC retained the necessary level of control.

The Court need not marshal through all of these asserted indicators of retained control. Some of these indicators fall short under Illinois law as demonstrating retained control. For example, the general right of an owner to stop work (or to stop work if he detects unsafe practices or conditions) is not sufficient to impose a duty pursuant to § 414. *Calderon v. Residential Homes of America, Inc.,* 885 N.E.2d 1138, 1148 (Ill. App. Ct. Mar. 26, 2008). Nor is the right to set work schedules. *Id.* at 1149-50. However, several of the documents presented by Plaintiff indicate that MRMC may have had more than just a general supervisory role with respect to the construction.

For example, Plaintiff presents an April 28, 2008, memorandum submitted by Julie Pendleton, Director of Safety and Security, entitled, "Pre-Construction Risk Assessment Summary and Measures to Be Implemented." Pl.'s Opp. to MRMC/NIMP Mot. for Summ. J. Ex. G. This document is addressed to both MRMC and Riley personnel. The documents starts by explaining:

> This, along with the Pre-Construction Evaluation is a summary of the scope and **required safety and infection prevention implementations** for the Linear Accelerator Addition project. This summary also includes the proper controls and Interim Life Safety Measures that **must be invoked** to minimize the impact of these activities on the operations, occupants and the building.

*Id.* at CTCA 0933 (emphasis added). This document placed certain responsibilities on Riley, which included the construction of smoke-tight barriers built of noncombustible or limited combustible materials "per this ILSM and MRMC Infection Control Construction Permit." *Id.* at CTCA 0935. Riley was also to provide extra fire extinguishers and erect dust barriers. *Id.* at CTCA 0936, 0938. The memorandum indicated that MRMC personnel would be monitoring safety at the construction site extensively. This monitoring included:

- With respect to fire extinguishers: "Security will document the presence of fire fighting equipment during their daily inspection of the construction zone." *Id.* at CTCA 0936.

- With respect to storage, housekeeping and debris-removal: "The Director of Facility Services, along with the Director of Safety

and Security, or designee, and Infection
Prevention Practitioner, will oversee the
construction area and ensure appropriate
measures are being taken and immediately
report concerns to the appropriate personnel."
Id.

- With respect to storage, housekeeping and
debris-removal: "Security will perform
construction safety site inspections daily.
Any deficiencies noted are immediately brought
to the attention of the Director of Safety and
Security and Facility Services departments."
*Id.*

- With respect to hazard surveillance of the
construction area: "Director of Facility
Services, Director of Safety and Security and
Infection Prevention Practitioner, or designee
will be inspecting the area regularly and
immediately report any concerns to the
appropriate personnel." *Id.* at CTCA 0937.

- With respect to dust barriers: "The Infection
Prevention Practitioner will inspect all
barriers for effectiveness and report any
deficiencies to the project supervisor." *Id.*
at CTCA 0938.

- With respect to security: "Security personnel
will inspect construction site, corridors and
exits, etc. daily as well as continue to make
rounds and complete shift logs, as usual. Any
deficiencies will be reported in a timely
manner to appropriate personnel." *Id.* at CTCA
0940.

MRMC argues that this document does not relate to the construction

contract with Riley, "other than Riley will be required to follow

the specifications that are created." MRMC Reply in Support of

Summ. J. at 13, ECF No. 123. MRMC indicates that this plan was

developed for the health and safety of medical center employees and

patients around the construction site. However, the reason it was

created is irrelevant when the question is whether it shows MRMC retained some control over safety issues. This document, as well as others identified by Plaintiff, indicates that MRMC retained some control over safety issues. Courts have found that such documents can put the extent of control over a worksite in issue. *See, e.g., Lulich v. Sherwin-Williams Co.,* 992 F.2d 719, 721-22 (7th Cir. 1993) (noting that a document entitled "Regulations for Contractors" that provided for the monitoring of a worksite by the principal's safety department put control of the worksite at issue, making summary judgment inappropriate).

However, the Court acknowledges "the existence of a safety program, safety manual or safety direction does not constitute retained control *per se.*" *Calderon,* 885 N.E.2d at 1147 (quoting *Martens v. MCL Constr. Corp.,* 807 N.E.2d 480, 492 (Ill. App. Ct. 2004). This is because penalizing a principal's efforts to promote and coordinate safety would not serve the goal of worksite safety. *Id.* As such, a safety program or manual must affect a contractor's means or methods of doing work sufficiently to bring the owner under the retained control exception. *Id.* The Court believes that the Risk Assessment Summary, and other documents identified by Plaintiff, raise a genuine question as to whether MRMC falls under the retained control exception. However, there are indications that MRMC retained control over more than just safety concerns. For example, Plaintiff submits an affidavit wherein he claims that

he was given, and followed, specific directions given by MRMC personnel including Tom Maurer (Facilities Director) and Russell Cote (Assistant Facilities Manager). J. Anderson Aff. at 2, ECF No. 107. Plaintiff indicates that he was given instructions during the demolition phase of construction in connection with salvaging materials, in connection with the installation of windows in Mr. Maurer's office, and regarding where to place and store tools and materials. *Id.* This testimony, based on Plaintiff's personal knowledge, raises an issue of fact as to the level of control MRMC had over the worksite.

Plaintiff also directs the Court to the 893 page Project Manual for the Linear Accelerator Project that was prepared by MRMC. MRMC claims that this manual is a "specification manual prepared by the architects and engineers" that "is not relevant to the control of the means and methods of work performed by plaintiff." MRMC/NIMP Reply in Supp. of Summ. J. at 13, ECF No. 123. The Court disagrees. First, the lengthy manual appears to address the methods of a number of aspects of the work contemplated by the construction contract. For example, Section 01044 governs "Cutting and Patching." Pl.'s Opp. to MRMC/NIMP Mot. for Summ. J. Ex. F. at Riley 00040-43. This section gives extensive direction as to the methods of cutting and patching of materials to be used on the Linear Accelerator project. A number of sections in the manual provide detailed guidance as to

- 18 -

the manner certain work is to be done. *See, e.g., id.* at Riley 00250-253 (Section 07148 "Fluid Applied Waterproofing"); Riley 00254-255 (Section 07215 "Sprayed Polyurethane Foam (SPF) Insulation"). Indeed, Plaintiff is a carpenter, and there is a section of the manual addressing various aspects of carpentry on the project. *Id.* at Riley 00242-249 (Section 06000 "Carpentry").

Based on these materials, the Court finds that there is a genuine issue of material fact as to whether MRMC retained sufficient control over the means and methods of the construction project as to establish a duty to Plaintiff under § 414. As such, MRMC's Motion for Summary Judgment on Plaintiff's § 414 negligence claim is denied.

### 2. Restatement § 343 – Premises Liability

As to premises liability, Illinois follows § 343 of the Restatement as to a possessor of land being liable for physical harm. *Midwest Drilled Founds. & Eng'g v. Republic Servs., Inc.,* No. 10 C 5446, 2012 U.S. Dist. LEXIS 91400 at *27 (N.D. Ill. June 28, 2012). Section 343 states:

> § 343. Dangerous Conditions Known to or Discoverable by Possessor.
>
> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that

it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

Restatement (Second) of Torts § 343. MRMC appears to make three arguments as to why it cannot be held liable under § 343: (1) MRMC did not have actual or constructive knowledge of the condition; (2) MRMC was not a possessor of land; and (3) the scaffold was not a condition of the property. The Court need only address the first argument, however.

MRMC argues that there is no evidence that anyone from the medical center had actual or constructive knowledge of a condition on the property that presented an unreasonable risk of harm to the Plaintiff. Plaintiff responds that he has presented evidence that the scaffolding on which he was injured was present at the premises for some time before the occurrence that it was bowed, and that MRMC personnel were required to inspect the construction site daily. MRMC has the better side of this argument.

Under Illinois law, owners or occupiers of property owe invitees the duty of maintaining their property in a reasonably safe condition. *Culli v. Marathon Petroleum Co.,* 862 F.2d 119, 123 (7th Cir. 1988). This includes a duty to inspect and repair

dangerous conditions on their property or give adequate warnings to prevent injury. *Id.* To be liable, MRMC must have had actual or constructive notice of the dangerous condition. *Id.*

There is no evidence that anyone was aware of any problem with the scaffolding on which Plaintiff injured himself prior to the accident, so Plaintiff cannot establish MRMC had actual notice. To proceed with the claim, then, there must be an issue of material fact as to whether MRMC had constructive notice of the problem with the scaffolding. "Constructive notice can be established under Illinois law under two alternative theories: (1) the dangerous condition existed for a sufficient amount of time so that it would have been discovered by the exercise of ordinary care, . . . or (2) the dangerous condition was part of a pattern of conduct or a recurring incident. *Id.* (citations omitted). Plaintiff argues constructive knowledge under the first theory.

A plaintiff seeking to establish constructive notice by virtue of the amount of time that a dangerous condition existed must provide some evidence of how long the condition existed. *McKia-Coy v. Horseshoe Hammond, LLC,* No. 08 C 1709, 2010 U.S. Dist. LEXIS 9189 at *8 (N.D. Ill. Feb. 2, 2010). In a constructive notice case "the time element to establish constructive notice is a material factor and it is incumbent upon the plaintiff to establish" that the condition was present long enough to constitute constructive notice. *Hayes v. Bailey,* No. 78-363, 400 N.E.2d 544, 546 (Ill.

App. Ct. 1980) (failure to establish constructive notice when hazardous condition could have manifested anytime within a two-and-a-half hour window).

Plaintiff here fails to put forth evidence establishing how long the scaffolding, and in particular the bow in the scaffolding, was present. Plaintiff states that the scaffolding on which he was injured was present on the premises "for some time before the occurrence." Pl.'s Opp. to MRMC/NIMP Mot. for Summ. J. at 18. In his statement of undisputed facts, he states that the scaffolding had been present "for a while." Pl.'s Statements of Add'l Fact ¶ 28, ECF No. 116. Such references are far too vague. In making these statements, Plaintiff's only support is the testimony of Russell Cote. However, Cote states simply that he did not see the delivery of the scaffolding, and that it was up "for a few weeks. In total, maybe a month." Pl.'s Opp. to MRMC/NIMP Mot. for Summ. J. Ex. D at 75. The problem with this statement is that it gives no indication of how long the scaffolding was present *prior to Plaintiff's accident*. Indeed, as MRMC points out, Plaintiff testified that the scaffolding arrived by truck at the site the same morning as his injury. The Court has been directed to no evidence showing what time the scaffolding upon which Plaintiff was injured was delivered, how long the scaffolding was on the truck, or how long it was in the vault before his injury.

Plaintiff fails to put forth evidence establishing how long the bent scaffolding was present on the premises before Plaintiff was injured. As Plaintiff has no evidence establishing a critical element of constructive notice, the Court declines to address MRMC's other arguments regarding notice and grants MRMC's Motion for Summary Judgment on Plaintiff's premises liability claim. *O'Neill v. Ford Motor Co.,* No. 05 C 7316, 2009 U.S. Dist. LEXIS 115107 at *71 (N.D. Ill. Dec. 9, 2009) (granting summary judgment on premises liability claim due to lack of evidence establishing how long the dangerous condition existed).

### C. Northeast Illinois Medical Properties (Count V)

#### 1. *Restatement § 414 Retained Control*

The Court need not go through as detailed an analysis under § 414 of the Restatement (Second) of Torts with respect to NIMP. It is unclear whether Plaintiff is asserting such a claim against NIMP, and if he is, he has presented no evidence that creates a genuine issue of material fact as to whether or not NIMP retained any control over the construction work being done. It did not enter into the construction contract with Riley, nor is the Court aware of any documents or testimony indicating it retained any control over the worksite. As such, NIMP's Motion for Summary Judgment as to Plaintiff's § 414 negligence claim is granted.

## 2. *Restatement § 343 Premises Liability*

The Court can also forgo a lengthy analysis regarding Plaintiff's premises liability claim against NIMP. Plaintiff's inability to demonstrate actual or constructive notice of the hazardous condition with respect to MRMC is equally applicable to NIMP. The Court declines to address NIMP's other arguments and grants NIMP's Motion for Summary Judgment on Plaintiff's premises liability claim.

## D. Safway (Count II)

### 1. *Motion for Summary Judgment*

Defendant Safway also seeks summary judgment in its favor on the negligence claim Plaintiff asserts against it. Plaintiff alleges that Safway supplied the scaffolding that led to his injury. Safway disputes this, arguing that another company, Great Northern Construction Supply, was the supplier of the scaffolding.

Plaintiff spends much of his opposition brief trying to discredit and debunk the materials upon which Safway relies in arguing that it did not supply the scaffolding. However, it is not Safway's burden to prove that Great Northern, or any other company, supplied the scaffolding. The question is only whether there is any genuine issue of material fact as to whether Safway provided the scaffolding. The only real support Plaintiff cites for his assertions that Safway supplied the scaffolding is his own affidavit. Plaintiff makes several statements in his affidavit

identifying Safway as the provider of the scaffolding. Safway claims that the affidavit is improper for a number of reasons, most significantly that it is not based on personal knowledge and it contains hearsay. An examination of the affidavit shows that Safway is correct.

Under Federal Rule of Civil Procedure 56(c)(4), "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." FED. R. CIV. P. 56(c)(4). "[S]elf-serving statements in affidavits *without factual support in the record* carry no weight on summary judgment." *Butts v. Aurora Health Care, Inc.,* 387 F.3d 921, 924 (7th Cir. 2004). While self-serving affidavit testimony can defeat a motion for summary judgment, this Circuit does not allow litigants to manufacture material fact questions by affidavit testimony that contradicts prior sworn testimony. *United States v. Funds in the Amount of One Hundred,* No. 11-3706, 2013 U.S. App. LEXIS 19358 at *17-19 (7th Cir. Sept. 19, 2013).

Plaintiff's affidavit starts with the statement "I have personal knowledge of the facts stated herein, *except where otherwise indicated*. . . ." Anderson Aff. ¶ 1 (emphasis added). Plaintiff then makes several statements regarding Safway. In paragraph 6, he states:

> On August 26, 2008, I was personally present
> at the construction site, and I was working
> below grade in the hole excavating for the
> foundation of the linear accelerator, also
> known as the vault. In the performance of my
> work duties on that day, I was assisting in
> the removal of certain heavy duty scaffolding
> from the vault, which had been supplied by an
> outside vendor, which I believed and
> understood to be a company named Safway.

*Id.* ¶ 6. Plaintiff later states that "[a]t the time of these operations on August 26, 2008, based on my personal observations, it was my understanding that the scaffolding had been supplied by a company known to me by the name 'Safway.'" *Id.* ¶ 12. Finally, Plaintiff states that "I reviewed the drawing of the layout of how the scaffolding was to be erected within the vault, which I believe was prepared by Safway." *Id.* ¶ 13. None of these paragraphs provide any basis for Plaintiff's beliefs; however, each statement suffers from larger problems than that. The first and third statements indicate a lack of personal knowledge, instead expressing Plaintiff's belief. In addition, all of these statements are contradicted by Plaintiff's deposition testimony, where he stated repeatedly he had not observed personally any indication of where the scaffolding came from.

> Q.  Did you see anything on that truck [delivering
>     the scaffolding] at all that indicated where
>     it came there?
> A.  No.
> Q.  Were there any markings on it at all?
> A.  Not to my knowledge.

Safway Resp. to Pl.'s Statement of Add'l Facts ¶ 12, ECF No. 119.

```
Q.    There's nothing on the truck that identifies
      as to where it's coming from or from whom it's
      coming, correct?
A.    No.
Q.    You would agree with me?
A.    Nothing that I saw.
```

*Id.*

```
Q.    Did you ever see it [the scaffolding layout
      plan]?
A.    I seen the plan, yes.
Q.    Did it have markings on it?
A.    Yes.
Q.    Did it have any markings as to whose plan it
      was?
A.    I'm sure it did.
Q.    Do you remember as you sit here right now if
      it did?
A.    I do not remember.
Q.    Did the scaffolding have any markings on it?
A.    That I don't remember.
Q.    Any decals.
A.    I don't remember that.
```

*Id.*

```
Q.    Do you know as you sit here right now who
      provided that blueprint?
A.    I was told that Roy [Micke] told me that.
Q.    That's the only thing you have – relative to
      any knowledge regarding whoever supplied the
      blueprint or whoever supplied any of the
      scaffolding parts is what Roy told you?
A.    Yes.
Q.    Nothing else?
A.    No.
Q.    You never saw anything on the scaffolding, you
      never saw anything on the trucks and you never
      saw anything on the print, correct?
A.    Correct.
Q.    You never talked to anybody from the
      scaffolding supply company, correct?
A.    No.
Q.    You never talked to the truck driver, correct?
A.    No.
```

```
Q.    And by correct I mean yes, I am correct?
A.    Yes, you're correct.
```

*Id.*

```
Q.    You yourself, John Anderson, okay, you have
      absolutely no personal knowledge as to where
      that scaffolding came from, correct?
A.    Other than Roy telling me –
Q.    I'm talking about you yourself.
A.    I don't.
Q.    Okay.  You've never identified it, you can't
      identify it, you can't identify the truck, you
      can't identify the prints, you can't identify
      anything, you yourself, correct?
A.    Correct.
```

*Id.* ¶ 5.  The Court finds this testimony in direct conflict with the statements in Plaintiff's affidavit.  They demonstrate both that he did not observe anything indicating that Safway provided the scaffolding, and that he did not himself possess personal knowledge as to whether the scaffolding belong to Safway.  "A party may not attempt to survive a motion for summary judgment by manufacturing a factual dispute through the submission of an affidavit that contradicts prior deposition testimony.  *Amadio v. Ford Motor Co.,* 238 F.3d 919, 926 (7th Cir. 2001).  When a deposition and an affidavit conflict, the affidavit should be disregarded unless it is demonstrable that the statement in the deposition was mistaken.  *Id.*  Plaintiff has made no claim that the numerous sworn deposition statements cited above were made in error.  Because paragraphs 6, 12, and 13 of his affidavit are not based on Plaintiff's personal knowledge and are contradicted by his

prior deposition testimony, they are insufficient to create a genuine issue of material fact.

The other two statements regarding Safway in Plaintiff's affidavit are inadmissible hearsay. In paragraph 15, Plaintiff describes a conversation he had with Roy Micke, Riley's project superintendent, several months after the accident in which Micke told Plaintiff that he was almost 100% certain that the scaffolding had been supplied by Safway. In paragraph 16, Plaintiff describes an email he read during the course of this litigation written by Mark Toepfer, Safety and Risk Manager for Riley, that states he had been informed that the scaffolding was from Safway. This statement involves hearsay within hearsay. Safway argues that both of these individuals corrected these statements during their depositions and indicated that they were mistaken when they identified Safway as the scaffolding provider. That does not matter. Neither of the statements described in Plaintiff's affidavit would be admissible at trial, and as such, the Court finds that they do not create a genuine issue of material fact.

Plaintiff makes one last argument as to why summary judgment should not be granted in Safway's favor. In a nutshell, he argues that critical documents have not been produced by Riley, MRMC and NIMP. He claims that none of the "ordinary construction records which would actually show what scaffolding was ordered, what scaffolding was delivered, what scaffolding was brought to the site

and rejected, or even what scaffolding was invoiced for" have been produced. Pl.'s Opp. to Safway Motion for Summ. J. at 9, ECF No. 103. In support of this argument, Plaintiff's counsel attaches his own affidavit detailing various documents he claims he requested from Riley, MRMC and NIMP that he did not receive. *See,* Aff. of P. Cantwell, ECF No. 106. He concludes his affidavit by stating:

> Plaintiff has been precluded from providing admissible, relevant, probative, and persuasive evidence in response to Safway's Motion for Summary Judgment because of the fact that the construction/daily log, the drawing/specification of the scaffolding, and/or receipts and/or proofs of payment for the scaffolding and crane have not been produced and/or have not yet been located.

*Id.* ¶ 13.

Plaintiff cites no authority for the proposition that he can continue to hold Safway hostage in this litigation based on the alleged discovery failures of other parties and non-parties. The Court notes that it twice granted discovery extensions in this matter at Plaintiff's request, in part because Plaintiff represented specifically that one of the grounds for the extension was that "[a]dditional discovery is required to establish the ownership, manufacture, and circumstances surrounding the delivery of the scaffolding at issue to the construction site. This information is critical to the preparation of an appropriate response to the pending Motions before this Court." *See,* Pl.'s

10/11/12 Mot. for Discovery Extension at 3, ECF No. 86; Pl.'s 12/31/12 Mot for Discovery Extension at 3, ECF No. 92. Despite recognizing that he lacked evidence necessary to establish the company that actually owned the scaffolding, Plaintiff never filed a motion to compel seeking these alleged missing documents. This Court refuses to deny Safway's motion for summary judgment because Plaintiff failed to get the evidence he sought to prove his case. The Court gave Plaintiff ample time to pursue such discovery.

For the reasons stated above, the Court finds that Plaintiff has put forth no admissible evidence that creates an issue of material fact with respect to his claim against Safway. As such, the Court grants Safway's Motion for Summary Judgment.

### 2.  Motion to Strike

Plaintiff filed a Motion to Strike various documents relied upon by Safway in support of its argument that Great Northern was the actual supplier of the scaffolding. As the Court has granted Safway's Motion for Summary Judgment without relying on those documents, the Motion is denied as moot.

### 3.  Attorneys' Fees under Rule 56(h) and Motion for Sanctions

Safway argues that it is entitled to attorneys' fees under Rule 56(h), and in addition filed a Motion for Sanctions seeking attorneys' fees pursuant to Rule 11. Safway requests these fees on the grounds that Plaintiff refused repeatedly to drop Safway from

this case despite being unable to uncover evidence indicating its involvement in the accident.

Rule 56(h) states in part:

> If satisfied that an affidavit or declaration under this rule is submitted in bad faith or solely for delay, the court – after notice and a reasonable time to respond – may order the submitting party to pay the other party the reasonable expenses, including attorneys' fee, incurred as a result. . . .

FED. R. CIV. P. 56(h). The Advisory Committee Notes to Rule 56(h) acknowledge that sanctions under this section are discretionary, not mandatory, as courts seldom invoke independent Rule 56 authority to impose sanctions.

Safway seeks all fees and costs incurred in responding to Plaintiff's Additional Statement of Facts and in preparing its Reply in Support of Summary Judgment. It relies on *GSS Salvage v. Alter Trading Corp.,* No. 08-3007, 2009 U.S. Dist. LEXIS 40903 (C.D. Ill. May 14, 2009) in support of request for fees. In that case, the plaintiff sought to avoid summary judgment through an affidavit that contradicted his prior testimony. *Id.* at *5-6. The court disregarded the affidavit and granted summary judgment in the defendant's favor. *Id.* The court also chose to award the defendant the costs of preparing its reply brief under Rule 56(g) (current Rule 56(h)'s predecessor) because "the affidavit flatly contradicted several key aspects of the affiants prior deposition

and did so without any explanation or acknowledgment. In such circumstances, fees and costs are appropriate." *Id.* at *6-7.

The Court agrees with Safway. Here, Plaintiff's affidavit contradicted his prior testimony in significant ways. The Court chooses to exercise its discretion under Rule 56(h) and orders Plaintiff to pay reasonable attorneys' costs and fees incurred by Safway in responding to Plaintiff's Additional Statement of Facts and preparing its Reply brief.

The Court denies Safway's Motion for Sanctions pursuant to Rule 11, however. Safway again seeks these sanctions because it believes Plaintiff refused to dismiss it from the case despite a lack of evidence that Safway was involved. The Court appreciates Safway's frustration, but gives Plaintiff the benefit of the doubt in light of the fact he did receive a few indications in the case that Safway may have been involved. It was when faced with Safway's Motion for Summary Judgment that Plaintiff should have realized conclusively that he lacked sufficient evidence to proceed against Safway, and dismissed it from the case rather than file a response with a faulty affidavit. That is why the Court will grant Safway's Rule 56(h) request for fees, but deny Safway's Rule 11 Motion for Sanctions.

### E. Cancer Treatment Center and Land Trust Defendants (Counts I & III)

The Land Trust Defendant and the Cancer Treatment Center entities both filed Motions for Summary Judgment, as well.

However, Plaintiff did not respond to these Motions. Plaintiff appears to explain why in a footnote to its Response to MRMC and NIMP Motions for Summary Judgment, where he states:

> With the exception of Safway, MRMC, and NIMP, Plaintiff's counsel and counsel for the Land Trust Defendant and the Cancer Treatment Center entities have agreed to dismiss by stipulation the remaining Defendants.

Pl.'s Opp. to MRMC/NIMP Mot. for Summ. J. at 1 n. 1. Despite this declaration and apparent agreement between the Plaintiff and those Defendants, the Court has been presented with no such stipulation of dismissal. As such, the Land Trust Defendant and the Cancer Treatment Center entities are still involved in this case. To save itself the trouble of ruling on these Motions for Summary Judgment when it appears these parties are no longer in the case, the Court will strike the Motions with leave to refile them should Plaintiff's representations to the Court regarding their dismissal turn out to be inaccurate. An appropriate Stipulation of Dismissal of these Defendants should be filed within ten (10) days of the entry of this Opinion.

## IV.  CONCLUSION

For the reasons stated herein the Court rules as follows:

1.  Cancer Treatment Centers' Motion for Summary Judgment [ECF No. 61] is struck with leave to refile;

2.  MRMC/NIMP's Motion for Summary Judgment [ECF No. 63] is granted in part and denied in part;

3. Chicago Land Trust's Motion for Summary Judgment [ECF No. 65] is struck with leave to refile;

4. Safway's Motion for Sanctions [ECF No. 78] is denied;

5. Safway's Motion for Summary Judgment [ECF No. 80] is granted. Safway has ten (10) days from the entry of this Order to submit its request for reasonable attorneys' fees consistent with this Order;

6. Plaintiff's Motion to Strike [ECF No. 108] is denied as moot; and

7. Plaintiff and Defendants Chicago Land Trust and the Cancer Treatment Centers have ten (10) days from the entry of this Order to file a Stipulation of Dismissal with the Court.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Date: September 27,2013

- 35 -